## ELLENBOGEN *v.* GRIFFEY.

Decided January 2, 1892.

1. *Sale—Usury.*

Into a *bona fide* sale of land or chattels no queston of usury can enter, for the element of lending and borrowing is absent.

Whether a *loan* would be rendered usurious by an agreement of the borrower to pay, in addition to the highest lawful rate of interest, the fees respectively of an attorney for preparing, and of the recorder for recording, a mortgage to secure its repayment, *quaere.*

2. *Mortgage—Power of sale—Purchase by mortgagee.*

A mortgagee selling under a power of sale in the mortgage may, if the terms of the mortgage expressly authorize it, become a purchaser at such sale, provided it be in all respects fairly and faithfully conducted.

3. *Mortgage—Appraisement.*

In appraising mortgaged property, under sections 4759–4761 of Mansf. Dig., no deduction can be made for prior liens. A sale of mortgaged property for less than two-thirds of its appraised value is void, though the amount of the bid exceeds two-thirds of the appraised value after deducting the amount of a prior lien.

APPEAL from *Pulaski* Chancery Court.

DAVID W. CARROLL, Chancellor.

On December 2, 1887, Hiram Robbins purchased of Elias Ellenbogen a stock of liquors and the fixtures in a saloon in Little Rock, giving therefor his note for $1600, due one year from date, bearing 10 per cent. interest, and secured by a mortgage of certain lots in said city, which contained a power of sale, authorizing the mortgagee to sell the property and to bid at the mortgage sale as any third person could do. It was agreed that the mortgagor should pay an attorney's fee of $10 for examining the title to the land and preparing the mortgage, and the recorder's fee for recording it. Nothing having been paid upon the mortgage debt, the mortgagee procured an appraisement of the property. The appraisers reported "that they viewed and valued said property, and find that it is of the value of $5850, and is subject to a prior mortgage for the sum of $3450, upon which there is now due the sum of $2767.18, and that the

net value of said property, after deducting the amount due as aforesaid upon said prior mortgage, is $3032.82."

On the 14th of March, 1889, the lots were sold under the power, and were bid in by the mortgagee, Ellenbogen, for $2025. Martha Griffey, to whom Robbins subsequently sold the lots, brought this suit to cancel the deed from Ellenbogen to himself, upon the ground that it was void (1) because the mortgagee was usurious, (2) because the mortgagee purchased at his own sale, and (3) because his bid was for less than two-thirds of the appraised value of the property.

The court found that the mortgage debt was usurious, and decreed that the mortgage and sale be removed as clouds upon plaintiff's title. Defendant appealed.

*W. G. Whipple*, for appellant.

1. In appraising property it is proper to deduct prior liens, in order to arrive at the money value of the interest of the debtor. Mansf. Dig., sec. 4760; 10 Neb., 421.

2. A mortgagee has a right to bid in the property at the sale, under a provision to that effect in the mortgage. Jones on Real Est. Mortgages, vol. 2, sec. 1883; 45 N. Y., 71; 12 Allen, 397; 3 Mer., 200; 11 Cl. & Fin., 684. A mortgagee thus purchasing may make a deed to himself. 2 Jones, R. E. Mortg., sec. 1892; 118 Mass., 554.

3. This is not a case of *loan or forbearauce* of money, but a plain *sale*, into which usury cannot enter. 122 U. S., 24; Tyler on Usury, ch. 10; 55 Am. Dec. 393, and note; 6 L. R. A., 439, and cases cited; 23 Gratt., 225; 14 Am. Rep., 136; 5 Wall., 497. The cases in 36 Ark., 248, 46 *id.*, 50, and 47 *id.*, 291, were loans under the guise or cover of sales, mere cloaks for usury.

4. The payment of the recording fee does not constitute usury. 51 Ark., 547.

5. Money paid for services, as to an attorney for examining the title, and drawing the papers, which is outside the loan and earned without reference to the use, loan or forbear-

ance of money, is a separate matter and will not invalidate the loan for usury. See 51 Ark., 534 ; *ib.*, 548 ; *ib.*, 546 ; 16 S W. Rep., 563 ; *ib.*, 575 ; Tyler on Usury, p. 134 ; 38 N. Y.,· 281 ; 55 Am. Dec., 395, note, etc. ; Parsons on Cont., vol. 3, p. 134 ; 2 T. R., 19; 15 Ves., 121 ; 19 Johns., 160 ; 2 Keyes, 41 ; 30 Conn., 175 ; 87 Ill., 513 ; 2 Sweeny, 155 ; 21 N. Y., 219 ; 6 Eng. Rep., 508 ; 14 At. Rep., 7 ; 49 N. W. Rep., 55 ; 45 *id.*, 1101 ; 14 Fed. Rep., 662, note.

*S. S. Wassell* and *Caruth & Erb* for appellee.

1.   Sixteen hundred dollars was the purchase price of the property ; when the price is fixed, and the money to be paid on time, a charge of interest greater than 10 per cent. is usury.   36 Ark., 248.   It is not the borrower's duty to record the instrument, nor to pay for examining the title ; they are a charge against the lender, and, if paid by the borrower, constitute usury.

2.   Under sec. 4761, Mansf. Dig., $5850 was the appraisement, and the attempt of the appraisers to deduct liens was *ultra vires.*   10 Neb., 421, refers to 8 Neb., 7, which was based upon a special statute.   Acts Neb., 1875, p. 60.

3.   The maker of a note cannot be held to the payment of attorney's fees for collection.   42 Ark., 167 ; 14 Fed. Rep., p. 662.

1. No element of usury in a sale.

HEMINGWAY, J.   Into a *bona fide* sale of land or chattels usury cannot enter, for the element of lending and borrowing is absent ; but if the sale is a mere device to cover a loan and exact excessive interest, it will not be protected by its false cover. *Davis* v. *Garr.*, 55 Am. Dec., 387, 393 and cases cited ; *Struthers* v. *Drexel*, 122 U. S., 487. In the cases in this court, relied upon by appellee, the transactions were found to be in fact loans of money, put in the form of sales to evade the statutes against usury ; and the court held that they were usurious loans, and that the false color given them could not defeat the statute. *Ford* v. *Hancock*, 36 Ark., 248 ; *Grider* v. *Driver*, 46 Ark., 50 ; *Tillar* v. *Cleveland*, 47 Ark., 291.   In a later case, where it was

found that there was a *bona fide* sale, we sustained a re-covery for the price, although it appeared that the purchaser agreed to pay for a chattel a profit of 20 per cent. upon its cost to the seller. *Brakefield* v. *Halpern, ante*, p. 265.

In the case at bar it does not appear that Robbins ever applied to Ellenbogen for a loan of money, or that the former desired to borrow, or the latter to lend, money. Ellenbogen was the owner of store fixtures and a stock of liquors, and Robbins wished to purchase them. The terms of a sale were agreed upon between them, whereby Robbins promised to pay for the property $1600, one year after date, and interest at 10 per cent. per annum, to be secured by mortgage on land, and the fees for examining the title to the land, and preparing and recording the mortgage. This was not in form a loan of money, and there is nothing to show that it was intended by the parties as a loan or that it was such in fact. It was therefore in substance and in law a sale. Tyler on Usury, 300; *Lowe* v. *Waller*, 2 Doug. (Eng. Rep.), 736.

As there was no loan, there could be no agreement to pay excessive interest for a loan. But it is argued that there was a forbearance of money owing, and in consideration thereof an agreement to pay the highest lawful rate of interest, and in addition thereto fees for examining the title and preparing and recording the mortgage. There was no debt in existence prior to the latter agreement. There was but one contract, and that embraced as well the agreement to pay the attorney's and recorder's fees, as that to pay $1600, and the one was as much a part of the consideration for the sale as the other. By the terms of the contract the price to be paid for the forbearance of money was fixed at 10 per cent., and there is nothing to show that this was an evasion of the statute or a cover for a different or greater charge.

As we find that the transaction was in reality a sale, and that the agreement was not made in consideration of the loan or forbearance of money, we hold that the charge of usury is not sustained. This announcement does not imply

that a different conclusion would have followed a different finding as to the character of the transaction. Such a rule has been announced in no decision of this court; on the contrary we enforced an agreement to pay full 10 per cent. for money where the borrower had paid, in pursuance of his previous undertaking, the fee for recording his mortgage. *Baird* v. *Millwood*, 51 Ark., 548. Whether the undertaking of one desiring to borrow money to pay the reasonable and proper charge for service to be rendered in examining his title and drafting his securities would constitute usury, is a question we have not•considered. An affirmative answer cannot be found in the decisions of this court. *Vahlberg* v. *Keaton*, 51 Ark., 534; *Banks* v. *Flint*, 54 Ark., 40. They follow the decisions of the New York courts upon statutes similar to our own, and we may remark that the courts of that State in determining the question stated have not gone to the extent now contended for. *Thurston* v. *Cornell*, 38 N. Y., 281; *Harger* v. *McCullough*, 2 Denio, 119; *Eaton* v. *Alger*, 2 Keyes (N. Y.), 41; *Palmer* v. *Baker*, 1 M. & S. (Eng. Rep.), 56. This case does not call for a determination of that question by us, and we indicate no opinion upon it. From the views expressed it follows that the mortgage was valid, and that the court erred in decreeing that it be canceled.

2. Right of mortgagee to purchase at his own sale discussed. This conclusion brings us to the consideration of the matters alleged against the validity of the sale under the power in the mortgage, the first of which is that the mortgagee became the purchaser at his own sale. The rule in equity is that the holder of a mortgage containing a power of sale cannot become a purchaser at a sale thereunder, unless the terms of the mortgage expressly authorize it; but where the mortgage expressly authorizes such a purchase, it is valid and binding, provided the sale was in all respects fairly and faithfully conducted. Boone on Mort., sec. 221. This question came before the Supreme Court of Massachusetts in the case of *Hall* v. *Bliss*, 118 Mass., 554, and was ruled as we have stated. It was contended there, as it is here, that

such a sale would be void because, in order to consummate it, the mortgagee would be required to make a deed to himself; but the court held that the position rested upon a misapprehension of the legal nature of the power in the mortgage and of a deed made under it, and that the purchaser took as the person named in the execution of the power as the grantee of the mortgagor and not of the mortgagee. This seems to us the proper view of the matter, and we so hold.

The validity of the sale is questioned for the further reason that the bid accepted was less than two-thirds of the appraised value of the land. The determination of this point depends upon the construction that should be given the statute regulating sales under mortgages. Mansf. Dig., secs. 4759–60–61.

3. Method of appraising mortgaged property discussed.

If it be construed as requiring the appraisers to deduct the amount of prior liens from the estimated value of the lands, this objection fails; otherwise it must be sustained. The statute is not explicit upon this point. It provides that the appraisers shall take and subscribe an oath " that they will well and truly view and appraise the property that may be shown them," and directs simply that they view and appraise it. No other basis of appraisement is indicated than a view of the property, and both the oath and statutory direction are silent as to search or inquiry for prior liens. The statute not only fails to prescribe a search for or ascertainment of prior liens as a duty, but also fails to prescribe any means for such ascertainment or rule for fixing the value after the liens are ascertained. It is clear that the market value of lands belonging to a debtor, solvent without taking it into account, is not always reduced to the extent of the lien upon it. He may be entirely good for the amount of the debt without any lien, or the lien may cover enough other property to satisfy it and release the particular piece from its operation. But if the statute contemplates that the appraisement shall represent the difference between the value of the property and prior liens, the circumstance

S C—18

of solvency referred to would make no difference.    If such were the rule, a purchaser at a sale under a junior mortgage should not only hold the property subject to the prior lien, but by his purchase should become bound to pay it off and hold the mortgagor harmless.   The statute contains no such provision, and must have contemplated no case to make it necessary.   It was intended to prevent a sacrifice, where the condition of the property was such as prevented a sale at a fair price, and the construction contended for would entirely defeat its purpose in this class of cases.

To test this construction let us inquire what the appraisers would do in this state of case:  They are appointed to appraise lot 1, worth $2000, with the view to a sale under a mortgage to secure $1000; they find a prior mortgage on said lot 1, which also covers lots 2, 3, 4 and 5, to secure $5000; and they find that the last lots are ample security for the prior mortgage.   Upon inquiry, they are told by the mortgagor that he has paid half of the prior mortgage debt, and, moreover, that it was void for usury; but the mortgagee denies that there has been any payment, or that the mortgage is tainted with usury.   Now, should the appraisers try these disputed questions as to the prior lien, and upon their finding make an appraisement?   And if they find the debt unpaid and valid, shall they deduct the entire debt, or apportion it to the different lots subject to it, and deduct from the value of lot 1 only its portion?   If such apportionment is to be made, shall it be according to the value of each, or equally to each?   Upon all these questions the statute furnishes no light to the appraisers, and it must be concluded that they do not arise within the scope of the appraisers' duty.   In the case supposed, if the entire first mortgage is to be deducted from lot 1 by the appraisers, a sale may be had for a dollar, a result which the statute was intended to prevent.   The statute explicitly directs them to view the property, and this, with the knowledge of values which they are supposed to have, enables them, without further inquiry, to value the particular property viewed; but

they are not in a position to do more, and the statute re-
quires them to do no more. In the sale attacked, the ap-
praisers reported that the property was worth $5800, but
made deductions on account of a prior mortgage. The
value of the property fixed the appraisement; and as the
bid accepted was less than two-thirds of that sum, it follows
that the sale was invalid.

The decree below will be reversed and a decree entered
here; the mortgage will be sustained against the charge of
usury, and the sale under mortgage declared void for the
reason stated in the opinion.