## SMITH *v.* KAUFMAN.

### Opinion delivered November 1, 1920.

1. PARTNERSHIP—POWERS OF SURVIVING PARTNER.—While the death of one partner *ipso facto* dissolved the partnership, it did not wind up the partnership, and the surviving partner had the right to take notes evidencing a debt due the former firm and a mortgage securing the same in the name of the former firm, and to institute suit for recovery on the notes and to foreclose the mortgage.

2. HUSBAND AND WIFE—SUPPLIES TO WIFE TO MAKE CROP.—Where a wife, owning land, contracted for supplies to make a crop thereon, the debt, evidenced by notes and secured by mortgage, was her individual debt, for which she was liable.

3. USURY—CREDIT SALE OF GOODS.—A note given for the purchase of goods on credit is not usurious because the credit price is higher than the cash price, the element of lending and borrowing money being absent.

4. REFORMATION OF INSTRUMENTS — DESCRIPTION OF LAND.—Where the description contained in a mortgage did not describe the land which the parties intended to be embraced in the mortgage, the trial court properly reformed the mortgage.

Appeal from Yell Chancery Court, Dardanelle District; *Jordan Sellers*, Chancellor; affirmed.

*John M. Parker,* for appellant.

1. The firm of Kaufman & Wilson, the payee of the notes, was not in existence at the time the notes and mortgage were executed, as Wilson, one of the partners, had died and the partnership ceased. 6 Cadman's Cyc. of Law, p. 21, note.

2. The notes and mortgage were void because defendant, payor, was a married woman, the enabling act not having been passed until afterward. Acts 1915, p. 684; Acts 1873, p. 382; 39 Ark. 238; 70 *Id.* 167. In the absence of a statute giving her power, a married woman. in purchasing goods for the household necessities, such as the husband should furnish, can not bind her separate estate. 1 Benjamin, § 37.

3. The mortgage is void because of insfficient description of the land. 41 Ark. 495; 68 *Id.* 150; 60 *Id.* 487; 135 *Id.* 598; Pomeroy on Cont., § 148; 72 Ark. 546.

4. Defendant was a married woman, and courts of chancery are not in the habit of reforming the contracts of married women. 39 Ark. 120. Under the circumstances of this case it should not be done.

Parol evidence and maps or surveys were not competent. Jones on Civil Ev. 543, § 434.

5. The whole contract is tainted with usury. 36 Ark. 248; 46 *Id.* 64; 47 *Id.* 291; 53 *Id.* 454; 66 *Id.* 464; 32 *Id.* 346; 62 *Id.* 379.

6. The property was wrongfully taken, as no itemized account and statement of balance due was rendered. Acts 1893, p. 171, act No. 99.

7. Leading questions were asked and answers improperly admitted.

*J. B. Crownover* and *J. E. Chambers,* for appellee.

1. The defense of usury can not be made, as there was no loan to appellant. 36 Ark. 254; 55 *Id.* 268; 112 *Id.* 520.

2. The debt was not the husband's but appellant's and she owned the property in her own right; her husband was not able to work, and it is undisputed the credit was extended to the wife. 126 Ark. 247. If her husband's debt she could mortgage her separate estate to secure it. 102 Ark. 340.

3. A surviving partner is authorized to wind up the affairs of the firm where one of the firm dies. 129 Ark. 273.

4. Appellant intended to mortgage the land described in the plat and a court of equity has the right and power to reform mistakes. 102 Ark. 87.

WOOD, J. The appellee, as surviving partner of the firm of Kaufman & Wilson, on the 15th day of December, 1916, instituted this action against the appellant to recover on ten promissory notes each for $31.32, all bearing interest at the rate of ten per cent. per annum from date until paid. The notes were dated February 5, 1915, and the first note was due October 1, 1915, and the last one due October 1, 1924. The appellee alleged that the appellant on the 25th day of January, 1915, executed a mortgage to Kaufman & Wilson on five acres of land carved out of the northwest corner of the northwest quarter (NW¼) of section 35, township 5 north, range 21 west, to secure the notes in question. Appellee alleged that the description of the land set forth in the mortgage was incorrect; that it was the intention to mortgage the following described land: Five acres in the northwest corner of the southwest quarter (SW¼) of the northwest quarter (NW¼) of section 35, township 5 north, range 21 west, setting forth the description by metes and bounds. Appellee alleged that two of the notes were past due, and that these notes with interest amounted to $122.31, and prayed that he have judgment on these notes, with interest, and that a lien be declared on the land for these and the other notes, and that in default of payment the land be sold subject to a prior mortgage executed by the appellant in favor of one Callie Williams, for a debt of $80, and that the mort-

gage be reformed so as to correctly describe the land as alleged in the complaint.

The appellant answered, alleging that her signature to the notes was obtained through the fraudulent representation that her husband was indebted to Kaufman & Wilson in the amount for which the notes were given, when in truth he was not so indebted; that she was a married woman, and the notes were executed to secure the payment of an alleged debt of her husband, for which she was not liable; that she was an unlettered colored woman, and was induced by false and fraudulent representations to execute the notes. She denied executing the mortgage. She alleged that the tract of land in controversy was her homestead; that she had never at any time agreed to mortgagee it to Kaufman & Wilson; that, if a mortgage purporting to be executed by her was obtained, it was without her knowledge. She further set up that the mortgage was void because of insufficient description of land, and also that the notes were tainted with usury.

In addition to the defenses thus set up in the lower court, the appellant also contends here that under the undisputed evidence the suit can not be maintained because the firm of Kaufman & Wilson, the payee in the notes and the mortgagee in the mortgage, was not in existence at the time the notes and mortgage were executed, because prior to that time James A. Wilson, a member of that firm, had died. This is the first question we will consider.

The undisputed testimony shows that the debt, evidenced by the notes and secured by the mortgage in controversy, was made by the appellant with the firm of Kaufman & Wilson before Wilson's death. While the death of Wilson *ipso facto* dissolved the partnership, it did not wind up the partnership affairs. The surviving partner, for that purpose, had the right to take the notes evidencing a debt due the former firm and the mortgage securing the same in the name of that firm, and to institute suit for recovery on the notes and to foreclose

the mortgage. Sections 598, 599, 1 Rowley on Modern Law Partnership; 1 Lindley on Partnership, pp. 289-341. See *Blodgett* v. *Muskegon*, 27 N. W. 686, and other cases cited in note; Washburn on Real Property (5 ed.), vol. 3, 278. The payee and mortgagee were clearly thus designated to indicate that the debt was contracted with, and due the firm of Kaufman & Wilson.

The next question is: Were the notes and mortgage void because the appellant was a married woman? The evidence shows that Charlie Smith, the husband of appellant, was eighty-eight years old and decrepit. The appellant was much younger, and the title to the place on which they resided and which they were cultivating was in the appellant. While the testimony shows that the account, for which these notes were executed, was in the names of Letha Smith and Charlie Smith, yet the testimony of the bookkeeper of Kaufman & Wilson, as well as its credit manager and collector at the time the indebtedness was incurred, shows that the credit was extended to the appellant and not to her husband. The bookkeeper testified: "We extended to her credit from the fact that she was the ramrod of the place and that she had charge of making the crop." And the credit manager testified that all credits charged on the books of Kaufman & Wilson to Letha and Charlie Smith were extended on the credit of Letha Smith, due to the fact that she was engaged herself in a farming enterprise. A preponderance of the evidence shows that she was the owner of the land on which the crops were grown as well as the personal property on the place; that she was the responsible party, and that the debt evidenced by the notes and secured by the mortgage was her individual debt contracted with reference to her own separate estate. For this she was liable. *Adair* v. *Arendt*, 126 Ark. 247.

Appellant contends that the notes were void for usury. It is sufficient answer to this contention to say that the undisputed testimony shows that the indebtedness, for which the notes in controversy were executed,

was an account for merchandise sold by Kaufman & Wilson to the appellant. There was no element of lending or borrowing in the transaction. On the contrary, it was simply a *bona fide* sale of chattels on a credit in which transaction the appellant had to pay a higher price than she would have had to pay had she bought for cash. The record does not discover any testimony that would warrant the conclusion that there was anything in the account or the notes showing a device to cover usury. On a *bona fide* sale of merchandise on a credit at a higher price than the purchaser would have to pay for cash, no charge of usury can be predicated, for the element of lending and borrowing money is absent. *Ellenbogen* v. *Griffey*, 55 Ark. 268; *Blake Bros.* v. *Askew & Brummett*, 112 Ark. 520.

Appellant insists that the trial court erred in reforming the mortgage, but this contention can not be sustained because we find from a preponderance of the evidence that it was the intention of appellant to mortgage the land as it is now correctly described in the decree. The description contained in the mortgage does not describe the land upon which appellant resided, and which the undisputed evidence shows the parties intended to be embraced in the mortgage. There was no error in the court's decree in this respect. See *Soderman* v. *Bell*, 102 Ark. 87.

The last contention of appellant is that the appellee wrongfully took possession of the stock embraced in the mortgage, but we have reached the conclusion that the testimony does not sustain this contention. On the contrary, a preponderance of the evidence shows that the notes and mortgage in controversy evidenced a full and fair settlement of the indebtedness from the appellant to the appellee. The stock was turned over to the appellee under that settlement and was not wrongfully taken from the appellant.

We have refrained from setting out and discussing in detail the voluminous testimony in the record, because it could serve no useful purpose as a precedent.

We are convinced from a careful consideration of it, that the decree is in all things correct, and it is therefore affirmed.