## EDWARDS *v*. WILEY.

Opinion delivered November 14, 1921.

1.  USURY—SALE OF LAND.—In a sale of land, the exaction of a price, however exorbitant, cannot import into the transaction the characteristics of usury, as the element of lending and borrowing money is absent.

2.  SIGNATURE—ATTESTATION—Where there is no question as to a contract for the sale of land having been executed, and possession was taken under it for many years, it is immaterial that the proof fails to show that the purchaser's signature, which was by mark, was duly attested.

3. FRAUD—EXORBITANT PRICE FOR LAND.—The mere fact that a
purch'aser of land, by reason of lack of familiarity with land
values, was induced to pay an excessive price for it, does not
establish fraud.

Appeal from Sebastian Chancery Court, Ft. Smith
District; *J. V. Bourland,* Chancellor; reversed.

*George F. Youmans,* for appellant.

1. The allegations of the complaint are not suffi-
cient to charge usury. Into a sale of land or chattels
usury cannot enter, as the element of lending or borrow-
ing is absent. 55 Ark. 268; Tyler, Usury, 300; 2 Doug.
736; 224 S. W. (Ark.) 978.

2. The sole cause of action set out in the complaint
was usury. It was, therefore, error to grant permission
to amend the complaint, after testimony should be in-
troduced, so as to allege that the contract was obtained
through subterfuge, thereby giving permission to intro-
duce a new cause of action. 75 Ark. 465; 87 S. W.
1179; 84 N. Y. 420; 59 Ark. 165; 26 S. W. 824; 21 Am.
St. 414; 55 N. J. Eq. 37; 36 Atl. 475; 78 Ala. 284; 103
*Id.* 217; 123 Mo. 96; 24 Ark. 459; 34 *Id.* 63; 35 *Id.* 555; 77
*Id.* 355; 91 S. W. 773.

3. There was no attempt to prove usury at the
trial, nor any finding by the court that any fraud or
subterfuge was practiced upon Wiley, or any advantage
taken of his alleged ignorance by the appellant in ob-
taining the contract. There was no evidence tending
to support such an allegation. That Wiley was il-
literate may be conceded, but the finding that he was un-
able to understand the contract is supported by no testi-
mony whatever. His competency and capacity to con-
tract will be presumed. 27 Ark. 166. In the absence
of mental incapacity on the part of Wiley, and advantage
taken thereof, proof of the fixing of a price for the prop-
erty greater than its true value would not sustain the
judgment in this case. 88 Ark. 615. 113 S. W. 1015.
But that allegation was not proved.

4. The method of establishing a signature provided
by the statute, C. & M. Dig. § 9732, is not exclusive. The

mark of one who cannot write, though unattested, may be proved to be his signature by other testimony. 49 Ark. 18; 51 *Id.* 48. Wiley's long acquiescence in the contract and recognition of its obligations renders proof of its execution unnecessary.

*Hill & Fitzhugh,* for appellees.

1. The transaction was clearly usurious. It was not necessary, under the law, that Wiley should have intentionally entered into a usurious contract. 135 Ark. 575. If property is sold at an exorbitant price, so much of the consideration as was extortionate is added to the interest, and when it makes more than 10 per cent, it renders the contract usurious. 46 Ark. 50; 146 Ark. 55; 36 *Id.* 248.

2. Plaintiffs in stating that the allegations of the complaint were probably not broad enough to cover the evidence which would thereafter be introduced, pursued only the fairer course, and thereby gave notice of a broadening of the issues, of which defendant had no right to complain. They had the right to amend to conform to the proof. 94 Ark. 365; 33 *Id.* 811; 53 *Id.* 263; 58 *Id.* 504; 59 *Id.* 317; 7 Enc. Pl. & Pr. 483; 31 Cyc. 401. Such amendments are left largely to the discretion of the trial court, and in the absence of abuse and material prejudice, that discretion will not be disturbed. 25 Ark. 7; 26 *Id.* 405; 54 *Id.* 444; 58 *Id.* 7; 103 *Id.* 79; 124 *Id.* 229. There is no claim of surprise. 130 Ark. 83. And the allegations of fraud in the amendment to the complaint are definite and certain. The decree was predicated on the allegation that the minds of the parties never met on the contract, and the proof sustains it.

3. Signatures by mark must be proved by the subscribing witnesses. C. & M. Digest, § 9732; 38 Ark. 278. While this method of proof is not exclusive, as held by this court, yet it has not held that an illiterate's name can be signed, and his mark made for him, by the other party to the contract. 76 Ala. 247; 43 Mich. 397; 5 N. W. 427; 6 N. Y. 303.

SMITH, J. Appellees instituted this suit to cancel a contract for the sale of a certain house and lot in the city of Ft. Smith on the ground of usury. The complaint alleged that on March 20, 1910, appellant, John B. Edwards, was the owner of lot 5, in block 65, in the city of Ft. Smith, and that its then value was $1,500. That, in order to obtain an exorbitant rate of interest, Edwards fixed the price of the lot at $2,250, and contracted to sell it to William Wiley at that price, payments to be made at the rate of $20 per month, payable quarterly, with interest at 8 per cent., and that this price was fixed as a subterfuge whereby usurious interest might be collected. This branch of the case may be disposed of by saying that all the testimony shows that the transaction between Edwards and Wiley was one for the sale of the lot. Neither of the parties intended or contemplated a loan of money, and it was not such in fact. This was a sale, and was so intended, and the exaction of a price, however exorbitant, cannot import into the transaction the characteristics of usury, as the element of lending and borrowing money is absent. Such was the express holding of *Ellenbogen* v. *Griffey,* 55 Ark. 268, and reaffirmed in the case of *Blake Bros.* v. *Askew & Brummett,* 112 Ark. 514, and the more recent case of *Smith* v. *Kaufman,* 145 Ark. 548.

Appellees amended the complaint to conform to the proof by alleging fraud in the procurement of the contract, in this, that Wiley was an illiterate negro, and unfamiliar with real estate values and business affairs, and that Edwards took advantage of his ignorance and imposed upon him by naming an unreasonable and excessive price for the property; that Wiley did not know that he was being thus imposed upon, and that therefore the minds of the parties never met upon the terms of the sale; and that, having been thus defrauded, Wiley should be held responsible only for the fair market value of the property, which did not exceed $1,500 for a credit sale; and there was a prayer that appellees be charged with that amount and a settlement be had on that basis.

Wiley died intestate in April, 1920, and left as his only heirs, two sons, one of whom conveyed his half interest to his half-sister, Rebecca Ellis, who, with the other son, are the plaintiffs in this suit.

Attached to the original complaint as an exhibit thereto is a copy of the contract between Edwards and William Wiley, which is signed by Edwards and by Wiley by mark without attestation of that signature.

Wiley appears to have had no fixed time for making his payments, nor were they of uniform amounts, but numerous payments were made extending up to the time of Wiley's death and aggregating $2,358.70.

The testimony is in sharpest conflict as to the value of the property, and the court found the actual value of the property at the time of the sale to have been $1,700 upon the basis of a sale on time. Without setting out or reviewing here this testimony, we announce our conclusion to be that it does not appear that this finding is clearly against the preponderance of the evidence.

It is contended that the contract made an exhibit to the original complaint, which is a typewritten instrument, is not in fact the contract made by the parties at the time of the sale, and that the original and genuine contract between the parties was written out with pen and ink.

The court made no specific finding on this issue, but the finding made, ''that no legal contract of the purchase was executed, and William Wiley was illiterate and unable to read the contract purported to have been signed in his behalf by the defendant or understand the purport thereof,'' indicates that the instrument here referred to appears to be the writing made an exhibit to the original complaint and which was in fact there alleged to be the contract made between the parties.

The only testimony tending to show that the contract between Edwards and Wiley was written with pen and ink, and not with the typewriter, is that of a colored woman referred to by the witnesses as Mrs.

Price.   Her testimony was to the effect that the con-
tract was executed on the dining table at her home, that
there was no typewriter there, and that she cleared the
table and got pen and ink and went out of the room,
leaving the parties to their trade.   This testimony would
not support a finding that Edwards had substituted a
typewritten contract for one written in ink ·with a pen,
and certainly not when it is remembered that the con-
tract, of which a copy was attached to the complaint,
was found in Wiley's trunk after his death, where he
had probably kept it during all the years preceding his
death.   Moreover, Edwards testified that he sold to
Mrs. Price a lot adjoining the one in litigation, and when
he did so he told her that he would take $2,250 for
the unsold lot, and she thereupon opened the negotia-
tions between Edwards and Wiley which terminated
in the sale.   Mrs. Price did not deny this statement, and
was asked nothing by appellees in regard to her reputed
conversations with Edwards.

Appellees discuss the effect of the failure of Ed-
wards to have the signature of Wiley properly attested;
but we think that omission is not of controlling impor-
tance.   There was a contract and possession was taken
under it.   This possession was long-continued, and many
payments of purchase money were made under it.   Ap-
pellees predicate their original suit, as well as their
amended cause of action, upon the allegation that there
was a contract of sale, and that possession was taken
pursuant to this contract, and Edwards, the party
sought to be charged with the contract to convey, ad-
mits that he signed it.   *Jones v. School District,* 137
Ark. 414.   It becomes unimportant, therefore, to de-
termine the effect of the insufficient attestation of Wi-
ley's signature.

There is no proof here of fraud except that Wiley
was unfamiliar with land values, and that advantage
was taken of that fact to induce him to pay an exces-
sive price for the home which furnished him shelter
until the day of his death.   No attempt was made

to show that any false or fraudulent representations in regard to values were made. Upon the contrary, Wiley appears to have been satisfied with his bargain, and to have made a faithful effort to comply with its terms, and, while he appears from the beginning to have been tardy with his payments, constant indulgence, extending over a period of more than ten years, was shown him, although the contract contained the provision that failure to make payments as provided should have the effect to cancel and annul the contract and to forfeit all payments previously made.

We think the finding of the court below is clearly against the preponderance of the evidence.

The court below, having fixed the sale price of the property at $1,700, adjudged the balance due to be $102.36, which sum was declared a lien on the property, in satisfaction of which a sale was ordered if payment was not made within ninety days. This decree will be reversed, and the court ordered to compute the balance due upon the basis of the contract price of $2,250.

Appellant argues for reversal of the decree the failure of the court to sustain his demurrer to the original complaint and the action of the court in permitting the amendment of the complaint to be made; but, in view of the conclusion we have reached and have stated herein, it becomes unimportant to decide those questions.