STANDARD MOTORS FINANCE COMPANY *v.* MITCHELL AUTO
COMPANY.

Opinion delivered May 2, 1927.

1.° PRINCIPAL AND AGENT—EFFECT OF NOTICE TO AGENT.—Where a salesman was the agent of an automobile company to sell second-hand automobiles, the company was chargeable with knowledge acquired by him while acting in discharge of his agency.

2. SALES—FALSE REPRESENTATION—RESCISSION.—Where a note for the price of a second-hand automobile affirmatively recited that 40 per cent. of the sales price had been collected, the falsity thereof afforded ground for rescission of the sale of a note sold to a finance company without recourse, where the payee was chargeable with knowledge of its agent that such cash payment had not been made.

3. USURY—SALES OF ARTICLES.—Charging a price more than 10 per cent. greater for an article sold on credit than for cash does not constitute usury.

4. USURY—WHO MAY DEFEND.—The usury law is for the protection of the borrower, and he alone can make that defense.

5. SALES—RIGHT TO RESCIND.—Where a material representation in a note that 40 per· cent. of the sales price for an automobile had been collected was false, the fact that the finance company which purchased the note from the payee was allowed thirty days for investigation to determine whether it would purchase the note *held* not to deprive it of the right to rescind.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed.

*Saxon, Wade & Warren,* for appellant.

*McKay & Smith,* for appellee. .

SMITH, J. Appellant is a corporation residing in and operating out of New Orleans, and is engaged in the business of buying notes given in partial payment of used automobiles. It deals with authorized sales agents of automobiles who take used cars as part payment of new ones, and its plan of operation is as follows: It furnishes to the dealer a blank sales contract, which contains questions to be answered by the dealer and certain other questions to be answered by the purchaser of a used car from the dealer. This contract requires the

dealer to add a certain per cent. of the cash price to the
sales price when the car is sold on credit, and a statement
is furnished the dealer by appellant showing what this
amount shall be.  This addition to the dealer's cash
selling price is referred to as a "service charge."  Iden-
tical contracts are used in all cases, and the contract
signed by Daniel Sherman, who bought a used car from
appellees, will show the system employed.  The cash
price of the car bought by Sherman was $224, and to this
the dealer added $26, making a credit sales price of $250.
The purchaser was required to pay 40 per cent. of the
credit sales price, which in Sherman's case amounted to
$100.  The balance of $150 due by him was divided into
monthly payments, and the title to the car was reserved
until all payments were made.

The questions which the purchaser was required to
answer gave information as to the purchaser's age, pres-
ent and previous employment, property owned and incum-
brances thereon, earnings, and from what sources, and
references, with addresses.  Attached to these question
blanks was a promissory note, reserving title to the car
sold, and providing that the installments should bear
interest after their maturity at the highest lawful rate.

It was the theory of appellant that, if the purchaser
paid 40 per cent. of the credit selling price of the car, the
interest therein thus acquired would be sufficient to induce
him to make the monthly payments of the balance of the
purchase money as they matured.

When these blanks had been properly filled and the
note signed by the purchaser, the contract and the note
would be sent to appellant, which was given thirty days
in each case to determine whether it would purchase the
note offered, and, if accepted within that time, appellant
remitted to the dealer the balance due on the note, less
the "service charge."  Appellant's profit in the trans-
action was represented by the service charge, which, as
we have said, was the difference between the dealer's
cash selling price and the credit price.  Appellant was

allowed the thirty days for such investigation as it cared to make, including inquiry concerning the purchaser.

Appellant's managing officers testified that its uniform and invariable rule was not to buy any note unless it was affirmatively shown that the purchaser had made a cash payment of 40 per cent. of the purchase price, and that all dealers, including appellees, were so advised.

Appellees, who are brothers, doing business as the Mitchell Auto Company, in making sales of new cars trade in used cars, which they sell for the best price obtainable. W. A. Taylor had charge for appellees of the sale of these used cars, and he was allowed a commission of 40 per cent. of the price received, and Taylor was required by appellees to collect as much as 40 per cent. of the purchase price of the cars sold by him, and appellees charged Taylor's account with 40 per cent. of the used car which Taylor sold.

The contract and note of Sherman, together with other similar notes and contracts of other purchasers of used cars from appellees, were sent to and accepted by appellant, who remitted to appellees the amount of all the notes, less the total of the service charges. Only a few payments were made on any of these notes, whereupon appellant sent a representative to Stephens, the place of appellees' business, to collect the notes. This representative interviewed the makers of these notes, and found that none of them had paid 40 per cent., as recited in the sales contract, in cash. For instance, it was shown in the Sherman contract that Sherman had actually paid only $10 in money, but had agreed to pay Taylor the balance of $90, which the sales contract recited as paid. Appellees testified that they knew nothing about the arrangement between Sherman and Taylor, or between the other purchasers and Taylor, and supposed that the $100 cash had been paid to Taylor by Sherman, and that the 40 per cent. had been paid by all of the other purchasers, and that these were cash transactions so far as they were concerned, as they charged Taylor's account with that amount of money. Taylor testified that he

did not report to appellees that Sherman and the other purchasers of cars had not paid him the 40 per cent. cash payment; that he did not consider it necessary to do this, as he was selling the cars on commission, and the transaction was, as between him and appellees, a cash transaction, as he was charged in each instance with the cash reported by him as having been collected from the purchasers.

Taylor was the agent of appellees, and they are charged with any knowledge acquired by him while acting in the discharge of his agency. He knew that appellant bought these notes on the assumption that 40 per cent. of the sales price had been paid, and that the representation to that effect contained in the sales contract was false. Upon discovering the falsity of this representation appellant demanded a cancellation of the sale of the notes, and tendered them to appellees, and, when this demand was refused, immediately brought this suit to enforce rescission, judgment being prayed in the alternative for the amount paid appellees for the notes, less the collections made thereon. The complaint was dismissed as being without equity, and this appeal is from that decree.

We think a case for rescission was made. Appellees may not have personally known that the purchasers had not made the 40 per cent. cash payment, but Taylor, their agent, knew this, and they are charged with his knowledge. The note which they tendered appellant contained the affirmative recital that 40 per cent. of the sales price had been collected, and this statement was false. This representation was highly material in inducing the purchase of the notes, and its falsity affords ground for rescission.

In 12 R. C. L., at page 345, § 100, of the chapter on "Fraud and Deceit," it is said:

"False representations which are made with knowledge of their falsity, and with a fraudulent intent, are, of course, ground for relief in equity as well as at law. As a general rule, however, courts of equity will grant

relief in such cases by way of rescission or otherwise, even though no fraudulent intent on the part of the person making the representations is shown, and though he made them innocently, as a result of misapprehension or mistake. All that need be shown under such circumstances is that the representations were false and actually misled the person to whom they were made."

Appellees insist that the decree should be affirmed for the reason that appellant does not come into court with clean hands, it being alleged that the transaction in its inception was usurious and void on that account, for the reason that the service charge exceeded 10 per cent. per annum on the money advanced by appellant.

Two answers may be made to this contention. The first is that appellant did not loan appellees any sum of money. The transaction was a purchase of notes. It is true that the "service charge" exceeded 10 per cent. of the sum paid, but this consisted in an addition to the cash price, which the purchasers—and not appellees—agreed to pay. Charging a price more than 10 per cent. greater for an article sold on credit than would have been charged had the sale been for cash does not constitute usury. *Edwards* v. *Wiley,* 150 Ark. 480, 235 S. W. 54; *Smith* v. *Kaufman,* 145 Ark. 548, 224 S. W. 978; *Blake Bros.* v. *Askew & Brummett,* 112 Ark. 514, 106 S. W. 965. The second answer is that the usury law is for the protection of the borrower, and he alone can make that defense. *Ford* v. *Hancock,* 36 Ark. 248. The notes in question were indorsed by appellees without recourse on them, and the makers of these notes are not parties to this litigation.

The fact that appellant was allowed to take thirty days for investigation to determine whether it would purchase a note tendered does not deprive it of its right to a rescission. It relied, and had the right to rely, on the representation made that a payment of 40 per cent. had been made, and the right to investigate the responsibility of the purchaser did not render this representation less material, because that representation was assumed as

true, and appellant's investigation was to determine whether, even then, it would buy the notes. *Matlock* v. *Reppy,* 47 Ark. 148, 14 S. W. 546. The notes would not have been bought, notwithstanding appellant's investigation, if reliance had not been placed on the representation that a 40 per cent. cash payment had been made. This representation was false, was material, and was relied upon, and induced the purchase of the notes, and the relief prayed should have been granted, and the decree of the court below will therefore be reversed, and the cause remanded with directions to enter a decree conforming to this opinion.