KELLEY *v.* BALLARD.

4-4297

Opinion delivered April 27, 1936.

*E. G. Ward, O. T. Ward* and *Carl L. Hunter,* for appellants.

*Arthur Sneed,* for appellees.

McHANEY, J. Appellant Kelley was the manager, collector, bookkeeper and disbursing officer of Light and Power Improvement District No. 1 and Water Works Improvement District No. 1 of Piggott, Arkansas, from November 1, 1930, to September 1, 1933, and appellant, American Surety Company, was surety on his official bond in the sum of $3,000. In March, 1934, after having an audit made of the separate books kept by Kelley in each of said districts, which audit showed a shortage in his accounts with both districts, appellees instituted this action against appellants to recover the shortage, and to reform the bond so as to show the obligees to be the two appellees above named instead of "Board of Commissioners, Public Improvement Districts, Piggott, Arkansas," as written in the bond. In response to a motion to make the complaint more definite and certain, appellees attached as an exhibit to the complaint an itemized statement of cash collected by Kelley, and not accounted for from December 1, 1931, to September 1, 1933, in the Light and Power District, in a total sum of $2,328.22, and a like statement for the same period in the Water Works District in a total sum of $1,016.08. A further sum was claimed amounting to $63.10 which was represented by customers' receipts for which no credits were given in the Customers Ledger accounts. The items above mentioned other than the $63.10 represented the result of an audit of the books kept by Kelley, made subsequent to his discharge, and were arrived at by totaling the credits in Customers Accounts and deducting therefrom adjustments and merchandise returned for credit, and comparing it with his cash, both on hand and in bank, after taking into consideration cash paid out for expenses, and he was found short in said amounts. Appellants answered and admitted that the bond was made for the benefit of the appellee districts, but denied any shortage in the accounts. They also moved to transfer the case to the circuit court and objected to the

appointment of a master to state the account, all of which was overruled by the court. A master was appointed who took all the testimony, restated the account and found appellant short in the Power and Light District in the sum of $1,670.08, and in the Water Works District the sum of $1,012.06, which, including the $63.10 item above mentioned made a total shortage, as found by the master of $2,745.24. This amount was reported to the court to be due appellees by appellants, and a decree was entered in accordance with the master's findings.

For a reversal of the judgment against them, appellants make a number of contentions. We will not discuss them all, as to do so would unduly extend this opinion. One of the arguments is that the chancery court should have transferred the case to the circuit court on their motion because the former was without jurisdiction. It is said that under §§ 5718 and 5719, Crawford & Moses' Digest, municipal improvement districts are required to make annual settlements and file same with the clerk of the city or town and that the council shall examine same and disallow all unjust charges and credits, subject to reexamination in a court of chancery. These sections have no application in matters such as are now under consideration. This is an action by improvement districts to recover from an employee and his bondsman a sum of money embezzled by the employee in the course of his employment. The chancery court had jurisdiction of this action for two reasons: 1st, a reformation of the bond was sought and obtained to more definitely identify the obligees as appellees; 2nd, a long and complicated account was involved, there being about 700 accounts to be examined in both districts, and extending over a period of 21 months. Generally the items are small, consisting of charges and credits for light and water service. It is well settled that for either reason equity has jurisdiction. *Smith* v. *Kaufman*, 145 Ark. 548, 224 S. W. 978; *Terry* v. *Little*, 179 Ark. 954, 18 S. W. (2d) 916.

Appellants also say the court erred in appointing a master, in not discharging him on their motion, and in

not sustaining their exceptions to his report. Should this all be true, it would be no ground for reversing a decree otherwise correct. It might justify a retaxing of costs. Otherwise appellants could not be prejudiced. We think the master was properly appointed and that the fee allowed him, $200, is not excessive.

When Kelley was checked out September 1, 1933, a check was made from the balance sheets of appellee districts, and it was found that he owed them $50.30 and they owed him $194.82. They paid him the difference, believing it to be correct and without any detailed audit. It is now insisted this constitutes an account stated, behind which appellees cannot go—that they are estopped. But not so. Appellees acted without knowledge of the facts that an audit later made developed. They also acted promptly in making the detailed audit, and immediately made demand for restitution. The account rendered appellees by Kelley was not a true account as developed by the audit, and as soon as its falsity was discovered, and the amount of the shortage determined, demand was made for restitution on appellants.

The real question in the lawsuit was: Did appellant Kelley collect, wrongfully abstract, and misappropriate the funds of appellee districts? The auditor, whose qualifications are not questioned, testified to the shortage. The master who restated the account and heard all the testimony reported that Kelley was short in the amounts heretofore stated. He found that since the audit was made a number of sheets from the day-book or scratch book had been removed, and that he could not check the auditors' report with the books in their mutilated condition. It was shown that Kelley was given access to the books to prepare his answer to the auditors' report. It was shown that Kelley's system of bookkeeping was to charge the customers in the ledger with their service charges and merchandise purchased, and when customers paid their bills same was entered in the day or scratch book and transcribed from that book to the credit side of the customers' ledger, or if an adjustment was made in a customer's account or merchandise returned, credit was

given in the proper account in a column for that purpose. In practically all instances, customers were given proper credit for their payments, but the cash did not find its way into the cash journal or in the bank account. The court heard the report of the master and all exceptions thereto, and judgment was entered against appellants in the amount stated.

Appellant Kelley very earnestly insists that he did not get the money, that he was not short in his accounts, but, on the contrary, that he accounted faithfully for all the money coming into his hands. But it appears to us, as it did to the master and the trial court, that the total of the credits in his customers' ledger, after deducting adjustments and returns, should balance with his cash and cash items.

The decree is not only not against the preponderance of the testimony, but appears to be amply supported by it, and must be affirmed.

BAKER, J., disqualified and not participating.