BLACKBURN vs. RANDOLPH.

33    119
61    127

1. TRANSCRIPT FOR SUPREME COURT. *Original Papers. Practice.*
   The practice of sending up with the transcript original papers filed in the cause in the court below, is disapproved; and the clerk directed to make a transcript of the same, and return the originals to the clerk of the Inferior Court.

2. REFORMATION OF DEED. *Privity*.

Where a mistake in the description of land occurs in a series of conveyances, under such circumstances as would entitle any one of the vendees to a reformation as against his immediate vendor, the equity will work back through all, and entitle the last vendee to a reformation against the original vendor.

3. —————. *Statute of Frauds*.

The statute of frauds does not interfere with the power of Courts of Equity to reform deeds or other instruments in which the parties intended to comply with the statute and were prevented by fraud, accident or mistake.

4. —————. *Judgment Lien. Priority*.

The equity of the vendee for the correction of a deed, is not displaced by the lien of a subsequent judgment, or execution issued thereunder.

APPEAL for *Desha* Circuit Court in Chancery.

Hon. —————, Circuit Judge.

EAKIN, J.:

Appellants claiming to be the owners of a certain plantation in Desha County, through a series of conveyances from a purchaser under a deed of trust, filed this bill against D. W. Randolph, as surviving partner, etc.; who as a judgment creditor of the original grantor in the trust deed, had caused an execution to be levied on a certain tract of land included in the plantation, and was about to sell the same. The object of the bill was to enjoin the sale and quiet complainant's title, on the ground that by mistake the parcel levied upon had been omitted out of the description of the lands in the trust deed, and that the mistake had been inadvertently carried through all the successive conveyances down to that to complainants. All necessary parties have been made defendants.

It is necessary to state somewhat in detail, so much of the case made by the bill and an amendment, as will render the application of the principles herein announced intelligible.

The plantation was sold and conveyed by George J. Graddy to Henry J. Johnson, in December, 1856. It was described as containing in all, 973 acres, and the numbers of the different

subdivisions were given according to the United States surveys. Amongst others a portion described as the " *South-East Quarter and North-East Fractional Quarter* of Section 20, (South of Deep Bayou) 7 South of Range, 1 East, 193 Acres."

On the 31st of October, 1865, said H. J. Johnson, in pursuance of a previous general agreement with regard thereto, executed a deed of trust of said body of lands, (or what was meant to be such) to Samuel Tate, to secure a large sum of money to be paid to certain levee contractors. Said deed of trust included all the lands purchased from George J. Graddy, except that "South-East Quarter and North-East Quarter of Section 20" was by mistake described as the North-East Quarter fractional, Section 20, 193 acres.

The debt remained unpaid, and on the 25th of March, 1868, said trustee having sold the lands in pursuance of the deed, conveyed them to Bartlett, and Johnson delivered possession. On the preceding day, Bartlett conveyed the same lands to C. R. Sheppard, describing them as the lands conveyed to him by said Tate as trustee. Both deeds were filed for record on the same day. Soon afterwards, Sheppard sold an undivided half of the lands to complainant, S. S. Buck, and still later the other undivided half to her husband, W. A. Buck, since deceased, but who in his life time sold his interest to complainant Drake, who afterwards sold to Winfrey.

It is alleged that throughout all these conveyances, the descriptions of the lands were taken from the deed of trust, and the error each time repeated, without having been noticed by any of the parties. That each grantor intended to convey the plantation by the true numbers, as it laid in a body, and was purchased from Graddy. That *bona fide* and valuable consideration was paid with each purchase, and that throughout, possession of the whole plantation was given to the successive purchasers, and attended their several ownerships.

Meanwhile, on the 27th day of November, 1867, defendant Randolph, as surviving partner of J. J. Michie & Co., recovered judgment in the Desha Circuit Court against defendant, Johnson, for a large sum of money, and on the 2nd day of March, 1872, execution issued thereon, which was levied by defendant Edington, as sheriff, upon said South-East Quarter of Section 20. The land was advertised for sale, and it was this sale which the bill sought to enjoin. Winfrey was made one of the defendants to compel him to accept the title to the lands by the reformed descriptions, so that complainant Drake might be saved harmless on his warranty.

It further appears from the bill and exhibits not controverted that on the 21st day of January, 1868, said Johnson was duly declared a bankrupt by the District Court of the Eastern District of Arkansas, and obtained his discharge on the 12th of November following. From his schedule filed in the proceedings, it appears that the lands were reported as described in the trust deed to Tate. There was also a statement of the incumbrances upon them with the remark that it was impossible to pay them off. No action with regard to the lands seems to have been taken by the assignee.

It is further shown in the amended complaint, that on the 17th day of February, 1866, said Henry J. Johnson, executed to W. Henry Graddy, another mortgage of the same lands describing them as "the premises upon which Johnson now resides, being the plantation purchased by me in or about the year 1856, of and from George J. Graddy, now deceased, lying and being situate in Desha County."

This mortgage was made subject to the trust deed of Tate, and was properly acknowledged and recorded. In 1867, said mortgagee filed a bill against Johnson and others, to foreclose this mortgage, and assert its priority over the trust deed to Tate. It set up the sale by Tate as trustee to Bartlett, and

the subsequent sales to Sheppard, and from him to W. A. and Sallie S. Buck, all of whom were made parties.

At the Fall Term, 1869, a decree was rendered in said cause,. confirming the title to said lands in Buck and wife, under said purchases.

An interlocutory injunction issued on the filing of the bill in this cause.

Randolph in his separate answer, substantially denies that it was the intention of said Henry J. Johnson, to include the South-East Quarter of Section 20, in the trust deed to Tate, or that it was included in any of the subsequent conveyances.

He further sets up and charges by way of defense, that said Johnson did not, in fact, make default in the payment of the amount secured by the trust deed to Tate, but paid it off, and combined with Bartlett, to defraud his creditors, and procured an assignment of said trust deed to be made to Bartlett for that purpose, who on his part procured the sale to be made under it by Tate, and executed the deed to Sheppard in pursuance of the fraudulent design. He protests that he is not bound by the decree in the former case, in which title was confirmed in Buck and wife, inasmuch as he was not made a party thereto.

At the April Term, 1872, Henry Johnson was allowed to file as an answer, a claim of said South-East Quarter, of Section 20 as a homestead.

Upon the hearing of the causes on the 12th of September, 1876, it was decreed that "the court doth find for the defendants and dissolve the injunction heretofore granted herein ; and remits the respective parties to their rights at law." Damages, on account of the injunction, were, on motion of defendant Randolph, assessed at $500, the same to be accounted for as part of the interest due, etc.

Blackburn vs. Randolph.

Complainants appealed, and an order was made of record "that appellants have leave to use in the transcript for the Supreme Court, the original depositions and pleadings and exhibits, on file in this cause, and that the *record entries only* need be certified, and leave is further given to withdraw the record in this case of *W. H. Graddy* v. *H. J. Johnson*, and others referred to in complainant's amended complaint, and that they may be used as part of said transcript.".

In accordance with this agreement the clerk has sent up, attached to the transcript, the original papers filed in the former cause.

In passing, this court uses the occasion to express its disapprobation of the practice of sending up with the transcript any original papers filed below.

It was doubtless done in this case to save expense to litigants; but it amounts to a spoliation of the records of the Circuit Court, which may thereby be lost; and, in any case, they are transferred from the proper depositories, where they should always remain for inspection. Where proceedings in another cause, in the same court, are pleaded; the judge may well exercise some discretion in the matter of requiring or excusing the filing of transcripts, inasmuch as its own records are always before it, and need only to be read. But, if not required at the hearing, there should always, in case of appeal in chancery, be an order to file with the other papers in the cause, certified transcripts of such records and proceedings, in other causes, as were used upon the hearing of the cause appealed; so that a complete transcript may be made for this court, without removal of any of the original papers from the proper files. In cases at law, the same end may generally be attained by bill of exceptions. The clerk of this court will be directed at the cost of appellant to make and file with the papers in this cause a transcript of the papers filed in the case of *W. Henry*

*Graddy* v. *Henry J. Johnson*, as he finds them attached to the transcripts of this cause ; and to return the originals to the Clerk of the Circuit Court of Desha County, to be restored to the files of his court.

First, as to parties : it is contended that there is no *privity* between complainants and Johnson, and that, in such case, courts of equity will not interfere to reform a deed, executed by mistake. They claim as the last grantees in a series of conveyances, beginning with Johnson, passing through the trustee, and resting with themselves. If, in either one of these conveyances, the deed of trust, that from Tate or Bart lett, or Sheppard, or Buck, or Drake, there was not a mutual mistake, whereby each party, vendor and vendee, actually supposed the particular piece of ground was described, when in fact it was not, the equity of complainants would, of course, fail.

But it is obvious that, where the same mistake has each time repeated itself, occurring between the vendor and vendee upon each transfer, under such circumstances as to entitle any one of the vendees to a reformation as against his immediate vendor, the equity will work back through all, and entitle the last vendee to a reformation against the original grantor.

What is meant when the cases say that the mistake will only be corrected between the original parties and those claiming under them in privity, is, in effect, that the court will not interfere in favor of subsequent purchasers who were simply ignorant of the former mistake and may be presumed to have intended to take by the description used, nor against subsequent purchasers by the true description for valuable consideration, without notice of the former mistake. That the remedy is strictly confined to privies is well shown in the case of *Steward and wife* v. *Pettigrew*, 28 Ark., 372, a case which carries the principle of reformation to its rational and most

beneficial extent. There the court interfered in favor of a purchaser at execution sale, and reformed a mistake in the advertisement and the Sheriff's deed, against a subsequent purchaser at execution sale upon a different judgment against the same defendant, whose levy, advertisement and deed described the land truly, and who knew of the former mistake. Here was a total want of privity, and the court proceeded upon the broad ground that an honest mistake in a deed should be corrected against any one who discovers it, and without superior equity seeks to obtain an advantage from it.

It is too well settled, that the statute of frauds does not interfere, in any respect, with the power of courts of equity to reform deeds or other instruments, in which the parties intended to comply with the requirements of the statute, and failed through accident, mistake, or fraud.

The mistake in this case, is palpable. The parcel in question, the southeast quarter of section 20, lies in the middle of a compact body, and makes a very essential part of the plantation. It is not conceivable that any prudent man would be willing to purchase the balance of the lands without it, for the purpose of using them as one plantation. The mistake is one apt to happen. A great majority of intelligent men and excellent lawyers lack the faculty of mapping out in their minds, lands described by the government surveys. In ringing the changes upon the cardinal points of the compass, fractions, sections, township and ranges, more care is necessary to avoid mistakes, than is usually taken. The true description in the original deed from Graddy, giving the quantity, 193 acres, evidently meant it as an approximation. The trust deed describes it as "the N. E. fr. sec. 20—193 acres," instead of "the southeast quarter and the N. E. fr. quarter of sec. No. 20, South of Deep Bayou, containing 193 acres." If the grantor had meant to reserve the southeast quarter he would not cer-

tainly have endangered the title by giving a quantity to cover the whole of his purchase from Graddy. He declared afterwards that he meant to reserve nothing, at a time when such a declaration was against his interests. He does not say now, in simply putting in his claim for a homestead, that he meant to reserve it then. He abandoned possession in favor of the purchasers under the trust deed, when the sale was made. When the trust deed was executed, the agent for the beneficiaries (and one of them), Flournoy, supposed that the description covered the whole plantation, and would not otherwise have accepted it. The same mistake ran through each successive sale, and possession attended each, of the *whole* plantation. Being thus palpable, it must be corrected, unless defendant Randolph has superior equities.

He claims only by virtue of a judgment obtained in 1867, and which ceased to be a lien in 1870, long before the levy of his execution. He is not a purchaser at all; for valuable consideration or otherwise. Whether or not his lien would be prolonged in a contest between himself and Johnson's assignee in bankruptcy we are not called upon to decide. The assignee sets up no claim, and the bankruptcy cannot of itself prolong the lien given by the laws of the State. Even if the lien existed, the equity for correction would be prior in time; and, as this court has repeatedly held, it would not be displaced by the judgment lien, or an execution levied under it.

An objection has been made to the acknowledgment of the deed of trust to Tate. It omits to state that it was made for the "consideration" therein contained, but does use the word "purposes." This acknowledgment would perhaps be considered defective if it were necessary to rule upon that point, as the consideration is certainly material. But the deed of trust, and the sale under it, and all subsequent conveyances, down to complainant's were good between the parties,

and would have transmitted the legal title but for the mistake repeated in each transaction. Considering that as done, which the parties intended should be done, these conveyances give complainant's standing ground in equity, as owners, to protect their rights against any not having superior equity. Moreover, the whole legal and equitable title to this plantation by its true description, as against Henry J. Johnson, has been vested in complainant Sallie Buck, and her husband, by virtue of the decree in the case of *Wm. Henry Graddy* y. *Johnson*, rendered 28th October, 1869. This decree inures to vest the legal title in complainants, as against all persons bound by the decree, and does that wholly independently of the trust deed to Tate, and without the necessity of reforming it. The defendant Randolph as surviving partner, was indeed no party to that suit, and is not bound by it, so far as he had rights, or equities, to be effected. But his utmost right at the time was to enforce his judgment lien, then existing against any estate or interest remaining in Henry J. Johnson after satisfaction of the mortgage to Wm. Henry Graddy. Failing to do that, all his rights vanished with the expiration of his judgment lien, and left the title in complainants unaffected thereby. His judgment, as a personal debt, is lost by the discharge of Johnson in bankruptcy.

Having neither a lien remaining, at the time the execution was levied, nor any rights against the discharged bankrupt under the personal judgment, to support the execution, he is not in condition to question the good faith and fairness of the sale to Bartlett from the trustee, Tate. If he were, the most we could say of that transaction, upon a careful examination of the evidence, would be that the circumstances are suspicious, but not incompatible with good faith. The fraud is not proven, and if it were it would not affect the title of complainants. There is no charge, nor scintilla of proof that

they participated therein, or had any intimation of it. The proof is abundant that they are innocent purchasers for full value.

It appears from the record that, pending the suit, complainant S. S. Buck intermarried with E. S. Blackburn, who was made a party and afterwards died. The result of which was only to change the name of S. S. Buck to S. S. Blackburn.

The Chancellor erred in refusing the relief prayed, and dismissing the bill. The decree must be reversed, and a decree will be entered here vesting in complainant Sallie S. Blackburn and defendant J. T. Winfrey all the legal and equitable title in and to said plantation, that was in Henry J. Johnson at the time of the execution of the deed of trust to said Tate ; and perpetually restraining defendants Randolph and the Sheriff of Desha County from proceding any further to sell said "southeast quarter of section 20" by virtue of said judgment or any execution or levy based thereon ; and that said Randolph pay the costs in this court and the court below, save the costs of making a transcript of the original papers sent up with the record, all of which must be paid by the appellants.