## GLOVER *v.* BULLARD.

### Opinion delivered January 11, 1926.

1.  VENDOR AND PURCHASER—DEFICIENCY IN ACREAGE.—Where it appears by definite boundaries or by words of qualification, such as "more or less" or the like, that the statement of the quantity of acres in a deed is a mere matter of description, and not of the essence of the contract, the buyer takes the risk of the quantity, in the absence of fraud.

2.  VENDOR AND PURCHASER—DEDUCTION IN PRICE FOR DEFICIENCY IN ACREAGE.—Where a sale of land is by the acre, and the statement of the quantity of acres is of the essence of the contract, the purchaser, in case of a deficiency, is entitled in equity to a corresponding deduction from the price.

3.  VENDOR AND PURCHASER—DEFICIENCY IN ACREAGE—GROSS MISTAKE.—Where the difference between the actual and the estimated

quantity of acres of land sold in gross is so great as to warrant the conclusion that the parties would not have contracted had the truth been known, the injured party is entitled to relief in equity on the ground of gross mistake.

4. REFORMATION OF INSTRUMENTS—ABATEMENT OF PRICE.—Where the parties to a sale of land believed that the deed described land south of the river only, though the description included land north of the river, the deed was properly reformed to include only the property intended, with proportionate abatement of the price.

5. VENDOR AND PURCHASER—DEFICIENCY OF ACREAGE—ABATEMENT OF PRICE.—Where the parties to a sale of land at a stipulated price per acre believed that the deed included only land south of the river, when it included land north of it also, it was error, in allowing abatement of the price, to consider the inferior quality of the land north of the river.

6. VENDOR AND PURCHASER—FAILURE OF TITLE—DEDUCTION.—Where part of the land described by a deed was owned by the government, abatement of the price accordingly was properly allowed, though an act of Congress passed after the deed was executed gave landowners claiming the land a preferential right to purchase at $1.25 per acre.

7. CONTRACTS—CONSTRUCTION.—The rights of the parties to a contract must be determined as they existed at the time the contract was executed.

Appeal from Poinsett Chancery Court; *J. M. Futrell,* Chancellor; reversed in part.

STATEMENT BY THE COURT.

Mrs. Lula G. Glover and Mrs. Lillie G. Weathersby brought this suit in equity against Samuel A. Bullard and others to reform a deed on the ground of mutual mistake, and to secure an abatement of the purchase price on the ground that there was a material deficiency in the quantity of land conveyed to them from that represented to be in the tract.

The land in controversy is situated in the northeast quarter of section 8 and in the north half of section 9, township 10 north, range 7 west, in Poinsett County, Arkansas. Samuel A. Bullard purchased the land from Richard G. Hobbs on the 6th day of May, 1902, and the description of the deed is, "south of river, fractional

northeast quarter of section 8, south of river, fractional north half of section 9, containing in all 244.63 acres more or less according to government survey, all in township 10 north, range 7 east.''

These lands were surveyed by the United States Government in 1841, and the above description is correct according to the meander lines of the Tyronza River as it appears from the field notes.

On the 14th day of May, 1917, Halliburton & Moore, real estate agents who had the exclusive agency from Samuel A. Bullard for the sale of said land, entered into a written contract with Mrs. Lillie G. Weathersby and Mrs. Lula G. Glover for the sale thereof, ''at and for the stipulated price of $65.41 dollars for each acre of said tract of land which a survey shall show.'' In this contract the land is described as all of the northeast quarter of section 8 lying south of the Tyronza River and all of the north half of section 9 lying south of said river. Pursuant to said contract on the 14th day of June, 1917, Samuel A. Bullard and his wife executed a warranty deed to said land to Mrs. Lillie G. Weatherby and Mrs. Lula G. Glover. The consideration is recited to be $4,001.25 paid in cash and the further consideration of $12,000 evidenced by notes for $1,000 each to be due on the first of January of each year in the next succeeding twelve years. The deed describes the land as all of the northeast quarter of section 8 lying south of Tyronza River, and all of the north half of section 9 lying south of said river, all in township 10 north, range 7 east, containing 244.63 acres. The agent of Bullard who made the sale for him represented to the agent of the purchasers that the Tyronza River was the boundary of the land on the north, and that a fence was the boundary on the south. He also represented that the tract contained 244.63 acres, and the agent of the purchasers entered into the contract for the purchase of said land in behalf of his principals, relying upon said representations being true, and the deed was subsequently

made to his principals in reliance upon the representa-
tions made to their agent. Subsequently it was ascer-
tained that, as the Tyronza River now runs, and as it
flowed at the time of the execution of the contract and
deed in question, the land claimed by Bullard south of
the Tyronza River in the northeast quarter of section 8
is 73.50 acres, including 12.27 acres belonging to the
United States; that the land actually owned by him in
the northeast quarter of section 8 is 61.23 acres; and
that the land owned by him in the north half of section
9 south of Tyronza River as it flowed at the time of the
execution of the deed is 101.34 acres. Thus it will be
seen that at the time of the execution of the contract
and deed in question Bullard only owned 171.57 acres
south of Tyronza River, and this left a deficiency of 73.06
acres of land attempted to be conveyed south of the
Tyronza River as it now flows through said sections
eight and nine. Other facts will be stated or referred to
in the opinion.

The chancellor found that the agents of Bullard
represented to the agent of the plaintiffs that the Tyronza
River as it flowed at the time was the north boundary
of the land in question, and that it was the intention of
the defendant to sell, and or the plaintiffs to buy, only the
land in sections 8 and 9 described in the deed south of
Tyronza River as it actually flowed, and that its descrip-
tion otherwise in the deed was due to a mutual mistake
of fact, and that the deed should be reformed so as to
describe only the land intended to be sold and purchased.
The court found that the plaintiffs were entitled to an
abatement of the purchase price on account of the de-
ficiency in the quantity of the land; but, in doing this, took
into consideration that the land owned by the defendant
north of Tyronza River as it actually flowed was less
valuable by one-third than the land owned by him south
of the river.

A decree was entered in accordance with the findings
of the chancellor, and to reverse that decree the plain-
tiffs have duly prosecuted an appeal to this court.

*Hughes & Hughes,* for appellant.

*Mann & Mann,* for appellee.

HART, J., (after stating the facts.) The chancery court correctly found that the deed in question should be reformed so as to vest the title in the land in sections 8 and 9 north of Tyronza River, as it actually flows, in the defendant. The undisputed evidence shows that the agent of the defendant represented to the agent of the plaintiffs that the tract of land intended to be sold was situated south of the Tyronza River as it actually flowed at the time. The agent of the plaintiffs and of the defendant were on the land at the time, and it was intended by both parties that only the land south of Tyronza River as it actually flowed should be sold, and it was their intention to describe this land only in the contract of sale and in the deed which was subsequently executed pursuant to the terms of the contract. Both parties were ignorant at the time that the defendant owned any land in sections 8 and 9 north of Tyronza River as it actual flowed. The defendant did not intend to sell, and the plaintiffs did not intend to buy, any land north of Tyronza River. Hence the land north of Tyronza River as described in the deed was the result of the mutual mistake of both, and, under the undisputed evidence, it was the duty of the chancery court to correct the mistake and reform the deed accordingly.

It follows that the decision of the chancellor on this branch of the case was correct.

On the part of the plaintiffs, it is earnestly insisted that the court erred in taking into consideration the inferior quality of the land north of Tyronza River, in allowing the abatement of the purchase price for the deficiency in the quantity of land intended to be conveyed.

On the other hand, it is the contention of counsel for the defendant that the court erred in allowing any abatement of the purchase price on account of the alleged deficiency in the quantity of land intended to be conveyed.

The general rule on this question is clearly stated in *Weart* v. *Rose,* 16 N. J. Eq. 290. It is there said that the general rule as laid down by Chancellor Kent is that where it appears by definite boundaries, or by words of qualification, as "more or less," or as "containing by estimation," or the like, that the statement of the quantity of acres in the deed is a mere matter of description, and not of the essence of the contract, the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case.

On the other hand, where the sale is by the acre, and the statement of the quantity of acres is of the essence of the contract, the purchaser, in case of a deficiency, is entitled in equity to a corresponding deduction from the price.

There is a further qualification of the general rule recognized in that case and by our own decisions to the effect that, where the difference between the actual and the estimated quantity of acres of land sold in gross is so great as to warrant the conclusion that the parties would not have contracted had the truth been known, in such case the party injured is entitled to relief in equity on the ground of gross mistake.

As sustaining these principles of law, in addition to the case above cited, see *Harrell* v. *Hill,* 19 Ark. 103; *Haynes* v. *Harper,* 25 Ark. 541; *Drake* v. *Eubanks,* 61 Ark. 120; and *Solmson* v. *Deese,* 142 Ark. 189.

Gross mistake is where the difference between the actual and the estimated quantity of land represented is so great as to clearly warrant the conclusion that the parties would not have contracted, had they known the truth. *Melick* v. *Dayton,* 34 N. J. Eq. 245.

As we have already seen, the undisputed evidence shows that neither the vendor nor the purchasers knew that the former owned any land north of Tyronza River, and that the former intended to sell, and the latter to purchase, only the land in sections 8 and 9 south of Tyronza River as it actually flowed. The agents of the

respective parties were on the land when the contract was made, and the agent of the vendor pointed out to the agent of the purchasers Tyronza River as the north boundary line of the land. The agent of the vendor represented, and the agent of the purchasers believed, that the tract shown as the land of Bullard, south of Tyronza River, contained 244.63 acres. It turned out that there were only 171.57 acres south of Tyronza River owned by Bullard. This was the difference of 73.06 acres, which is material. Both parties in fixing the price believed that the tract of land south of the river contained 244.63 acres. The land north of the river was not considered at all. The plaintiffs were damaged in failing to get 244.63 acres south of the river, and the abatement ought to be in proportion to the price agreed to be given for the land as represented. This is shown to be $65.41 per acre. According to the rule laid down in the cases cited above, the plaintiffs are entitled to a reduction of 73.06 acres at the rate of $65.41 an acre, which amounts to $4,778.85.

The land in sections 8 and 9 north of Tyronza River, which it turns out belongs to Bullard, was not considered by the parties in making the purchase of the land in question. Neither party believed that Bullard owned any land north of Tyronza River, and that fact did not enter into their minds at all in making the contract for the sale of the land, or in the execution of the deed in consummation thereof. Therefore, it did not make any difference whether or not the land owned by Bullard north of the Tyronza River is of inferior quality to that owned by him south of the river. Bullard only intended to sell, and the purchasers to buy, the land owned by him south of Tyronza River. Bullard's agent sold the plaintiffs a tract of land which he pointed out and represented as lying south of Tyronza River and as containing 244.63 acres. The land turned out to contain only 171.57 acres, leaving a deficiency in quantity of 73.06 acres. This, as we have already seen, under the principles of equity en-

titles the plaintiffs to an abatement of the purchase price in proportion to the price agreed to be given for the land as represented.

Again it is claimed that this abatement should not be allowed as to the 12.27 acres of land in the northeast quarter of section 8 south of Tyronza River, which turns out to belong to the United States. The contention of the defendant in this respect is based upon the fact that an act of Congress was passed, when the mistake in the original survey was discovered, which gave to the landowners who had claimed the land a preferential right to purchase it at $1.25 per acre. The rights of the parties must be determined as they existed at the time the contract was entered into between them. The act of Congress was not passed until afterwards. The plaintiffs were not required to enter into negotiations with other parties or with the United States for the purchase of land in order to mitigate the damages which the defendants must pay them on account of his breach of the contract.

The decree of the chancery court is therefore affirmed, in so far as it reforms the deed so as to vest the title to the land in sections 8 and 9 north of Tyronza River in the defendant Bullard. As to the abatement of the purchase price, the decree is reversed, and the cause is remanded with instructions to the chancery court to enter a decree in accordance with this opinion.