COMMONWEALTH BUILDING & LOAN ASSOCIATION *v.* WINGO.

4-3595

Opinion delivered November 19, 1934.

*Lake, Lake & Carlton,* for appellant.

*E. K. Edwards* and *Will Steel,* for appellee.

McHANEY, J. On August 25, 1926, the late Congressman, Otis Wingo, and his wife, the appellee, convey-

ed by warranty deed a certain eleven-acre tract of land adjacent to DeQueen, in Sevier County, Arkansas, to Robert A. Brown for a consideration of $5,500, of which $500 was paid in cash, and for the remainder notes were executed and a vendor's lien was retained in the deed to secure the payment of the unpaid purchase money, represented by said notes. Said deed contained the following clause: "It is further agreed that, upon full compliance with all of the conditions herein set out, the grantor will release the lien herein retained upon any lot or parcel of said land, and upon the payment to the legal holder of the notes of 3½ cents per square foot, embraced in the said lot, provided that interest due at the subsequent semi-annual interest payment periods is paid, which said payments shall be applied upon the indebtedness."

This clause was placed in the deed to enable Brown, who was constructing a number of residences in DeQueen and vicinity at that time, to construct houses on certain lots in said eleven-acre tract, clear the title thereto by procuring a release of the vendor's lien to such lots without paying the whole of the balance of the purchase money due on the whole tract. This enabled him to borrow money to construct the houses by showing a clear title to any particular lot or tract on which he decided to build a house. The tract in controversy is a lot 100 by 110 feet. Brown began the construction of a residence and garage thereon in the fall of 1926. He applied to appellant for a loan of $2,000 thereon for the purpose of completing the construction of said building, and, in order to clear the title, he procured a release deed from Mr. Wingo to said lot, which was placed of record. Thereafter appellant approved Brown's application for a loan, advanced to him the sum of $2,000 on January 14, 1927, taking a mortgage on said plot of ground which described the plot the same as in the release deed from Wingo to Brown which was executed on the 3d day of December, 1926. Brown completed the residence and garage, and he built two other residences on the eleven-acre tract in the same way. Brown failed to pay for certain materials and labor entering into the construction of said buildings, and mechanics' liens were filed against them.

Suits were brought to enforce said liens in which Wingo was made a party, and he filed an answer and cross-complaint, alleging default of Brown in the payment of his notes, and prayed a foreclosure of the lien retained in his deed to Brown. It was granted as to the entire tract less three small lots upon which buildings had been erected and which had been released from his vendor's lien. Appellant's mortgage on the lot in controversy was held to be second and subsequent to the materialmen's liens which were adjudged against it. The property was sold under the decree of foreclosure, and Mr. Wingo became the purchaser of all the land not released, and appellant became the purchaser of the lot in controversy, said sales being duly approved and deeds thereto acknowledged and approved. In all these proceedings the lot in controversy was described as in the release deed from Wingo to Brown above mentioned. Later, appellant sold the lot in controversy to one McCown, taking a mortgage from him and wife for the purchase price. In December, 1930, appellant foreclosed the McCown mortgage and reacquired the property at the foreclosure sale, and in all these proceedings said lot was described as in Wingo's release deed to Brown. Mr. Wingo died testate in 1930, and, under the terms of his will, appellee became the owner of his real estate, subject to all of the rights and liabilities attaching to it at the time of his death. In October, 1932, appellee wrote appellant a letter stating that in running the lines on her property known as Wingo Hill, she found that the house owned by appellant, being the tract in controversy, was on a part of her property; that one-half of the garage, two door steps, the southwest corner of the house and all of the front yard were on her land. She demanded $500 rent for the use of it, and offered to sell sixteen feet of it on the east side, forty feet on the south side, and fifty feet on the west side, in order to enable appellant to handle its property. Mr. Byington, agent for appellant at De-Queen, and a surveyor, assisted the appellee in making the survey in which it was discovered that the house on the appellant's tract of land extended over the lines, and onto appellee's property as heretofore stated. There-

after appellant instituted this action to reform the release deed from Wingo to Brown and all subsequent transactions affecting the title to said lot so as to describe a tract of ground 100 by 110 feet on which the improvements would be situated without extending over to appellee's property. The court denied reformation, and this appeal is from that decree.

We think the court erred in refusing to reform the release deed in question, and all other instruments thereafter affecting the title to said lot based on said description. It is clear from the language used in the deed from Wingo to Brown that it was the intention of Mr. Wingo to release any particular plot or tract of ground which Mr. Brown desired to have released, upon the payment to him or to the holder of the notes of $3\frac{1}{2}$ cents per square foot. It was manifestly the intention of Brown and of Wingo in the execution of the release deed to the plot in controversy to release from the vendor's lien the ground on which Brown was then building the improvements mortgaged to appellant. His failure to do so was the result of a mutual mistake. While Brown did not testify and Wingo is now dead, we think all the facts and circumstances clearly indicate that Brown did not intend to build a house or any improvements on land belonging to Wingo, and that Wingo did not intend that he should do so. The error was due to Brown's failure to properly describe the tract he wished released. Brown intended to get released the land on which he was then building a house, the foundation of which had already been laid, and it was Wingo's intention that this should be done. Brown's error in describing the tract was also Wingo's error in releasing it. This makes a clear case of mutual mistake. This court has many times held that courts of equity are vested with jurisdiction to reform instruments, including deeds and mortgages, in order to give effect to the intention of the parties. *Clark* v. *Roots,* 50 Ark. 179, 6 S. W. 728, 8 S. W. 569; *Smith* v. *Kaufman,* 145 Ark. 548, 224 S. W. 978; *Glover* v. *Bullard,* 170 Ark. 58, 278 S. W. 645; *Foster* v. *Dierks Lumber & Coal Co.,* 175 Ark. 73, 298 S. W. 495. The general rule is that equity has jurisdiction to cancel or reform written in-

struments, either where there is mutual mistake or where there has been mistake of one party, accompanied by fraud or other inequitable conduct of the other. We held in *Sherwin-Williams Co.* v. *Leslie,* 168 Ark. 1049, 272 S. W. 641, that, where the uncontroverted proof showed that it was the intention of the parties to a deed that certain lands should have been included, and that it was omitted through the oversight of the scrivener who prepared the deed, as between such parties, the deed will be reformed. Many other cases might be cited. This court has also held in *Blackburn* v. *Randolph,* 33 Ark. 119, that: ''Where a mistake in description of land occurs in a series of conveyances, under such circumstances as would entitle any one of the vendees to a reformation as against his immediate vendor, the equity will work back through all, and entitled the last vendee to a reformation against the original vendor,'' to quote the second syllabus. This same rule was reaffirmed in the case of *Modica* v. *Combs,* 158 Ark. 149, 249 S. W. 567.

Nor do we agree with appellee that the decision in the mechanics' lien case herein referred to constituted *res judicata* of appellant's rights. All these proceedings were based upon the erroneous assumption that the description in Mr. Wingo's release deed was correct. This holding will work no injury to appellee, but the contrary holding would work a great loss to appellant.

The decree will be reversed, and the cause remanded with directions to reform the release deed of Mr. Wingo, and also all subsequent instruments incorrectly describing the tract of land, in accordance with the prayer of appellant's complaint.