ELVIA L. REYNOLDS, TRUSTEE v. RAY DAVIS, ET UX

4659                                   431 S.W. 2d 841

Opinion Delivered September 30, 1968

*Herrod & Cole* for appellant.

*Wright, Lindsey & Jennings* for appellees.

LYLE BROWN, Justice. Ray Davis and wife brought this suit to recover the purchase price they paid for lands they bought from the Reynolds heirs. They alleged misrepresentation concerning gas royalties produced by two wells. The chancellor set aside the transaction and the heirs' trustee appeals. Appellant's principal contention is that any representation as to royalties merged in the conveyance. Secondly, they question the sufficiency of the evidence. Finally, it is argued that the Davises could not return good title because they had encumbered the land with a mortgage.

The heirs of H. R. Reynolds owned a 100-acre tract of land in Conway County. There were two natural gas wells in a unitized block from which the Reynoldses received royalties from Humble Oil. That was because the 100 acres was included in the unit. Elvia L. Reynolds was designated as trustee by the Reynolds heirs, with authority to sell the lands in fee. Marie Reynolds Arendt, one of the heirs living in Little Rock, contacted Dan Baldwin of Block Realty Company. She and Baldwin were business acquaintances, and on behalf of the heirs Mrs. Arendt gave Baldwin a listing.

With reference to the listing contract, here is Baldwin's version: In response to a telephone call from Mrs. Arendt, he went to her home. She described the land and related that it benefitted from two gas producing wells. The heirs received, so she said, between $1500 and $1800 per year in gas royalties from Humble. A listing with Block was prepared and Mrs. Arendt executed it for the Reynolds heirs. Baldwin's knowledge of the property came exclusively from the interview with Mrs. Arendt. The property was advertised by Block in two Little Rock newspapers. The ad referred to the gas royalties: "Drawing $1500 a year royalty, more later as gas line comes through." That reference com-

ported with a notation in the listing signed by Mrs. Arendt.

The same witness gave this version of the sale to appellees Ray Davis and wife: Davis responded to the advertisement by telephoning Baldwin. Davis then drove to the property and on his return he again contacted Baldwin and told Baldwin he was interested. The representation as to royalties was repeated. Baldwin tried to confirm it by contacting Humble, but they refused to divulge the information, which Humble considered confidential. A sale price of $20,000 was agreed upon and the offer and acceptance was drafted. In a space reserved for special conditions was typed this language: "This offer is conditioned that the producing gas wells are now paying royalties of $1,300.00 or more annually." Ray Davis and wife signed the offer. Elvia Reynolds came to Little Rock from Morrilton and signed in his capacity as trustee. Elvia was accompanied by a brother, and Baldwin testified that both men read the offer and acceptance.

Ray Davis was the only other witness for appellees. Summarizing: He learned from his first conversation with Baldwin that Mrs. Arendt could give him details. In a telephone conversation, Mrs. Arendt told Davis that the wells were producing more than $1500 annually. She said the land had to be sold to settle the estate. Davis relied on the assurance given by Mrs. Arendt and would not have purchased the land in the absence of those representations. His royalty income for the year 1966 was $616.68. He was paid $600 in royalties for the first nine months of 1967 and the total for that year would run between $700 and $750. The royalties received by the Reynolds heirs were stipulated as follows: 1962, $1,416.24; 1963, $1,334.27; 1964, $1,220.36; and 1965, $630.06.

So much for plaintiffs-appellees' testimony. Appellants produced the testimony of three of the Reynolds heirs. Elvis conceded that he had no objection

to his sister signing the listing; he signed the offer and acceptance; he read part of it but did not realize it contained a provision about royalty income; it was his idea it was paying around twelve to fifteen hundred dollars a year; each of the heirs received separate checks; it was true the payments had been on the decline in late years; and he had never made a representation about royalty production. Marie Reynolds Arendt related her conversation with Mr. Baldwin of Block Realty: She signed the listing but was not aware of all its contents; she told him the royalties varied from twelve to fifteen hundred dollars each year; she did not realize payments had been decreasing the past several years. Lela Reynolds Venable testified; however, her testimony concerned a brief conversation of no significance with Davis, which apparently occurred after the transaction.

The points for reversal will be italicized and discussed.

I. *Davis placed a condition in his offer; when he accepted the deed the condition was ended and merged in the conveyance.*

Appellant relies strongly on *Duncan* v. *McAdams,* 222 Ark. 143, 257 S.W. 2d 568 (1953). That case holds, so says appellant, that a contract for the sale of lands is deemed merged in the deed subsequently executed. That assertion is only partly true; there is another chapter. The execution of the deed being established, it cannot be set aside for variance with the contract unless the grantee meets the burden of establishing a mistake, a misrepresentation, or a fraud having been perpetrated on him. The rule does not require a showing of active fraud, and, inferentially, it is not here contended that any of the Reynolds family willfully set out to deceive Mr. Davis. The Reynoldses simply made a loose assertion concerning the royalties; the total amount of those payments was peculiarly within their knowledge; Humble would not release the totals to Bald-

win; the latter relied on the oral and written statement of Mrs. Arendt and passed this on to the purchaser. The representations were interpreted by the trial court as constituting constructive fraud. *Lane* v. *Rachel,* 239 Ark. 400, 389 S.W. 2d 621 (1965). We cannot say the chancellor's conclusion was against the preponderance of the evidence.

II. *There was no representation of any kind by Elvia L. Reynolds, trustee, or by anyone authorized to act for him.*

Elvia Reynolds signed the offer of sale which has been described in the summary of testimony; he also testified that he had no objection to his sister signing the listing. The heirs were in complete agreement about selling the land and were acting with complete harmony. The chancellor's finding that Elvia did give written representation was amply justified.

III. *Plaintiffs were not entitled to a rescission.*

This point overlaps Point I with the additional argument that the Davises subsequently placed a mortgage on the land. At the time of trial the balance was approximately $2000. The chancellor decreed that the Reynoldses refund the purchase price of $20,000 and that the Davises execute and deliver a warranty deed. Thus the inference is clear that good title must be reinvested in the Reynoldses. Naturally that could not be done without the mortgage being satisfied in full.

Affirmed.