IRA Y. BICKNELL ET UX *v.* THOMAS C. BARNES ET UX

73-79                                        501 S.W. 2d 761

Opinion delivered December 10, 1973

*Daily, West, Core & Coffman,* for appellants.

*Joe H. Hardegree,* for appellees.

FRANK HOLT, Justice. The appellees purchased a portion of a ranch from the appellants. Subsequent to a delivery of the deed with a vendor's lien, pursuant to a written contract, the appellees successfully sought reformation as to the recited acreage and purchase price. For reversal of that decree, appellants first contend the chancellor "erred in permitting Barnes [appellee] to reopen the question of acreage eleven months after the transaction was closed" because "(A) Time was expressly made the essence of the contract" and "(B) After February 15, 1971 the contract was an executed (fully performed) contract and was not subject to rescission either wholly or partially."

The appellees purchased a portion of appellants' ranch which was estimated to consist of 156 acres for the agreed purchase price of $70,000 with $30,000 down payment and the balance to be secured by a vendor's lien payable in one year. By mutual agreement the formal description of the property was waived with the understanding that "accurate legal descriptions" were in the process of being determined, the abstract brought down to date and a survey made if necessary. "A rough copy of the plat of the land" being conveyed was made a part of the contract. Following the foregoing provisions is paragraph 2 of the contract which reads:

If it be ascertained that the acreage is in excess of one hundred fifty-six (156) acres, the Purchasers agree to increase the purchase price by Two Hundred Fifty Dollars ($250.00) per acre; and if it be ascertained that the acreage is less than one hundred fifty-six (156) acres, the Sellers agree to reduce the price by Two Hundred Fifty Dollars ($250.00) per acre.

Subsequent paragraphs related to oil, gas and mineral rights; the appellants' right to continue in possession rent free until April 1, 1971; the proration of taxes; the parties' respective obligations as to insurance coverage; and the appellants would furnish an abstract of title reflecting a merchantable title. Thereafter follows the concluding paragraph 8 which recites:

The Thirty Thousand Dollar ($30,000.00) down payment is also considered as a forfeiture in the event the Purchasers fail or refuse to go ahead and complete the transaction and it is specifically stipulated that time is of the essence and the entire transaction is to be closed by a Vendor's Lien transaction within ten (10) days.

The contract was dated February 2, 1971. However, by mutual agreement the transaction was closed on February 15, 1971. In doing so, the parties relied upon appellants' surveyor, a Mr. Wood, who a few days previously had ascertained that the lands being conveyed consisted of 158.35 acres. The appellees paid the appellants $587.50, which was computed at $250 for the 2.35 acres in excess of the estimated acreage. The appellees, after taking the agreed delayed possession of the property, employed a Mr. Weaver to survey the property. When time permitted him, Weaver made a survey which revealed there was actually a shortage in the conveyance of 8.61 acres.

Appellants strenuously contend that time was made the essence of the contract by express stipulation and therefore any action which either party desired to take with reference to a survey and consequent acreage determination must have been done by the closing date, or otherwise any party so failing would be forever foreclosed from so doing. In other words, appellants assert that paragraph 8, which contains the provision that time is

of the essence, is controlling as to paragraph 2. We cannot agree. It is true that according to the cases cited by appellants time can be made the essence of a contract. However, generally this provision relates to a forfeiture of the purchase price. In the case at bar, we are of the definite view that the essence of time expressed in paragraph 8 relates to and is confined solely to the forfeiture of a very substantial down payment ($30,000) on the purchase price. Appellants recognize that "[T]he contract does not specifically say when the acreage excess or deficiency will be ascertained. . . " However, appellants forcefully argue that from a construction of the entire contract the parties intended the ascertainment of the correct acreage was foreclosed upon delivery of the deed. If the parties actually desired that the correct acreage had to be ascertained before closing the transaction, then that limitation should have been so expressed in paragraph 2, which relates specifically to the right of adjustment as to acreage and price.

Although agreements respecting the sale of lands are deemed to be merged into a deed subsequently issued, this principle of law does not prevent reformation upon a showing of mutual mistake of fact, a misrepresentation or perpetration of a fraud. Otherwise there could never be a reformation. *Reynolds* v. *Davis*, 245 Ark. 255, 431 S.W. 2d 841 (1968), *Duncan* v. *McAdams*, 222 Ark. 143, 257 S.W. 2d 568 (1952), *Stack* v. *Commercial Towel & Uniform Service, Inc.*, 120 Ind. App. 783 91 N.E. 2d 790 (1950). In the case at bar, the contract was subject to reformation (the pleadings were amended to confrom to the proof) based upon a showing of mutual mistake. Furthermore, the cause of action cannot be characterized as one for rescission as suggested by appellants.

In the sale of land by acreage where the quantity of acres is essential to the contract, we have recognized the purchaser is entitled to an adjustment of the acreage and a corresponding adjustment as to the purchase price. *Glover* v. *Bullard*, 170 Ark. 58, 278 S.W. 645 (1926). In the case at bar, the parties expressly agreed in paragraph 2 as to the estimated acreage and for a reduction or increase in the purchase price upon ascertainment of the correct acreage. As stated previously, we cannot agree that by paragraph 2 the parties restricted themselves to the agreed adjustment upon the closing of the transaction.

Appellants next contend the court erred in decreeing reformation of the deed to conform to the Weaver survey (appellees). The law is well settled that reformation of a written instrument is permitted in equity to show the true intent of the parties where there is a mutual mistake. *Welch* v. *Welch*, 132 Ark. 227, 200 S.W. 139 (1918). The parties seeking reformation, however, must present evidence that clearly and convincingly warrants a finding that a mutual mistake occurred. *Glover* v. *Bullard, supra, Dent, Adm'r. v. Industrial Oil & Gas Co.*, 197 Ark. 95, 122 S.W. 2d 162 (1938). However, the proof need not be undisputed in order to achieve reformation. *Galyen* v. *Gillenwater*, 247 Ark. 701, 447 S.W. 2d 137 (1969).

In the case at bar, 158.35 acres were conveyed by the deed which was based upon the survey made by Wood, appellants' surveyor. After the conveyance, as previously indicated, the appellees' surveyor, Weaver, ascertained from his survey that the deed conveyed a shortage of 8.61 acres and so testified. It appears that Wood and Weaver were each county surveyors. Wood, as a witness, did not have the advantage of his original map since he had lost it. However, following the initial hearing, Wood was permitted to testify again after resurveying the acreage. This time he testified that the acreage actually conveyed consisted of 161.65 acres of 3.30 acres in excess of his original survey. We have held many times that when the evidence is conflicting on factual issues the chancellor is in a better position to evaluate the evidence since he observes the witnesses, hears their testimony and we, on appeal, have only the printed word and exhibits before us. *Brown* v. *LeTourneau College*, 251 Ark. 851, 475 S.W. 2d 521 (1972). The provisions of the written contract specifically give the parties the right to ascertain the correct acreage. Therefore, when we consider the initial conflicting evidence (8.61 acres disparity) between the two surveyors coupled with the admission by appellants' own surveyor at a subsequent hearing that his first survey was inaccurate by 3.30 acres (increasing the disparity to 11.91 acres), we are unable to say that the finding of the chancellor, in reconciling the factual issue, failed to adhere to the standard of clear and convincing proof.

Appellants next contend that the court erred in denying interest on the $40,000 note from June 1, 1971, to March 8, 1972. This figure represents the balance of the

purchase price which was secured by a vendor's lien. Paragraph 1 of the contract provided that this balance would be paid "just as soon as they [appellees] dispose of their place in Houston, Texas, but not later than one year thereafter." The promissory note, which was given at the time of the closing of the transaction, provided that the appellees [makers] agreed that whenever they disposed or sold "certain of their real property in Houston, Texas, before the due date" they would thereupon pay the balance and "at any rate not later than one year from the date of this note [February 15, 1971]." The note further provided that interest would be computed at the prevailing interest in the local area. Appellee Barnes testified "certain property in Houston" meant his home place. It is undisputed that his home had not been sold. Appellant Bicknell took the position that the sale by Barnes of his business on June 21, 1971, activated the interest on the note from that date. However, Bicknell himself testified on direct examination that in their discussion of pre-payment on the note, Barnes stated "just as soon as I sell the property in Houston we will pay the note." Bicknell acknowledged that only the house was mentioned as being on the market and Barnes expressed the belief he would sell it in the near future. On this subject Bicknell then testified "[W]ell, I'll take a chance and gamble, then, that you do sell it right away and won't have to ride a full year." Bicknell further testified that Barnes told him he had a very profitable business which he could sell; however, Barnes expressed no desire to sell it. In view of this testimony, we certainly cannot say the chancellor's finding on this factual issue is against the preponderance of the evidence. We have considered and find without merit any subsidiary arguments raised under this contention, as previously stated, with reference to the note and interest.

Affirmed.